# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## NORTHERN DIVISION
## No. 2:24-CV-50-FL

| | | |
|---|---|---|
| THEODORE ROOSEVELT HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| FRANK J. BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Theodore Roosevelt Hudson ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). This matter is before the court on Plaintiff's motion for judgment on the pleadings [DE-13] and brief [DE-14] ("Pl.'s Brief") seeking judgment in his favor, and Defendant's responsive brief [DE-17] ("Def.'s Brief") in opposition. The time for filing responsive briefs has expired pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The motion and briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's motion [DE-13] and brief [DE-14] be allowed in part, Defendant's brief [DE-17] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

# I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on February 11, 2016, alleging disability beginning January 1, 2011. Transcript of Proceedings ("Tr.") 72, 169-75. Plaintiff subsequently amended his alleged onset date to January 1, 2014. Tr. 15, 33. His claim was denied initially. Tr. 56-72, 94-102. Plaintiff filed a request for reconsideration (Tr. 103), and was denied upon reconsideration on October 13, 2016 (Tr. 73-90, 104-11). On December 9, 2016, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 112-13. A hearing before the ALJ was held on September 11, 2018, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 31-54. On November 14, 2018, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 12-30. On January 14, 2019, Plaintiff requested a review of the ALJ's decision by the Appeals Council (Tr. 166-68), and this request was denied on December 11, 2019 (Tr. 1-6).

Plaintiff filed a complaint in this court seeking review of the then-final administrative decision. Tr. 498-512; *see Hudson v. Saul*, 2:20-CV-9-BO (filed February 14, 2020). On June 17, 2021, United States District Judge Terrence W. Boyle held a hearing on the motions. *See Hudson v. Saul*, 2:20-cv-9-BO [DE-31]. On July 6, 2021, Judge Boyle issued an order (Tr. 513-17) remanding the case "so that the ALJ can give careful consideration to plaintiff s non-exertional limits and the availability of jobs in the economy under step five" (Tr. 517); *see also Hudson v. Saul*, 2:20-CV-9-BO, 2021 WL 2816419, at *1 (E.D.N.C. July 6, 2021).

On May 17, 2023, a second administrative hearing was held before the same ALJ, at which Plaintiff, represented by counsel, and a VE appeared and testified. Tr. 445-72. On June 12, 2023, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 423-44. Plaintiff then requested a review of the ALJ's decision by the Appeals Council, and on August 14, 2024, the

2

Appeals Council declined to assume jurisdiction. Tr. 415-22. Plaintiff then filed her second complaint in this court seeking review of the final administrative decision. *See* [DE-1].

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III.  DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).  "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps."  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted).  The burden of proof and production during the first four steps of the inquiry rests on the claimant.  *Id.*  At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform.  *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c).  This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  *Id.* § 404.1520a(c)(3).  The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique."  *Id.* § 404.1520a(e)(4).

## IV.  ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act.  Tr. 439.  At step one, the ALJ determined Plaintiff had not engaged

4

in substantial gainful employment since January 1, 2014, the alleged onset date. Tr. 429.

Next, at step two, the ALJ determined Plaintiff had the severe impairment of migraine headaches. *Id.* The ALJ found Plaintiff had the following non-severe impairments: post-traumatic stress disorder ("PTSD"); attention deficit hyperactivity disorder ("ADHD"); social anxiety; generalized anxiety disorder; depression; avoidant personality disorder; and paranoid schizophrenia. *Id.* However, at step three, the ALJ concluded these impairments both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 431.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself. Tr. 430-31. Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform the full range of exertional work with the following limitations: "He could frequently climb ladders, ropes and scaffolds[; h]e could frequently climb ramps or stairs[; and h]e should avoid concentrated exposure to unprotected heights." Tr. 431. In making this assessment, the ALJ found Plaintiff's statements about his limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 432.

At step four, the ALJ concluded Plaintiff had the RFC to perform the requirements of his past relevant work as a corrections officer, as actually and generally performed. Tr. 437.

Although the ALJ found that Plaintiff is capable of performing past relevant work, the ALJ specifically made alternative findings for step five. The ALJ found in the alternative, upon considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in

5

significant numbers in the national economy that Plaintiff can also perform.  Tr. 438.

## V.  OVERVIEW OF PLAINTIFF'S CONTENTIONS

In this case, Plaintiff alleges the ALJ erred by failing to: (1) find additional medically determinable severe impairments that were supported by the medical and other evidence; (2) accord greater weight to the medical opinions of Neil Pugach, M.D. ("Dr. Pugach"), William C. Bowens, M.D. ("Dr. Bowens"), C. Thomas Gualtieri, M.D. ("Dr. Gualtieri"), and Errol Liebowitz, PhD ("Dr. Liebowitz"); (3) consider nonexertional limitations in making a determination on the RFC assessment; (4) properly assess Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms which were consistent with the medical evidence and other evidence in the record; and (5) consider all of the testimony of the VE.  Pl.'s Brief [DE-14] at 28-37.[1]  Each will be discussed below.[2]

## VI.  DISCUSSION

### A.      Additional severe medically determinable impairments

Plaintiff contends that the ALJ erred when she failed to find there were additional severe medically determinable impairments that were supported by the medical and other evidence.  Pl.'s Brief [DE-14] at 28.  Specifically, Plaintiff argues that:

> irritable bowel syndrome [("IBS")], [PTSD], [ADHD], social anxiety, generalized anxiety disorder, depression, avoidant personality disorder and paranoid schizophrenia were severe [medically determinable] impairments because each singularly and in combination . . . cause[d] more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities.

*Id.*

---

[1] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

[2] Plaintiff's third and fourth arguments overlap significantly and will therefore be addressed together below.

The Commissioner counters that "the ALJ's analysis comports with the regulatory framework" and that "[r]egarding Plaintiff's IBS, the ALJ considered the relevant evidence and explained why Plaintiff's impairment was not a medically determinable impairment." Def.'s Brief [DE-17] at 7.

Social Security regulations provide that "[s]tatements about [a claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled." 20 C.F.R. § 404.1529. Rather "[t]here must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence . . . would lead to a conclusion that the [claimant is] disabled." *Id.* A medically-determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521.

At both administrative hearings before the ALJ, counsel for Plaintiff confirmed that there is no diagnosis of IBS in Plaintiff's medical record (Tr. 47, 461). At the second administrative hearing, Plaintiff noted that there is a mention of IBS from a treatment note dated November 7, 2022, by clinical psychologist, Dr. Liebowitz, who conducted a tele-visit with Plaintiff and did not conduct a physical examination (Tr. 461-62). The ALJ notes in her written decision that Plaintiff has not sought treatment for his IBS since 2009, which was multiple years before his alleged onset date. Tr. 432.

Plaintiff does not explain at either administrative hearing, or in his brief, how the mention of IBS in a treatment note by a mental health professional three years after the date last insured satisfies the requirements of objective medical evidence from an acceptable medical source that shows that Plaintiff has the medically determinable impairment of IBS. *See Bollinger v. Barnhart*,

7

178 F. App'x 745, 746 n.1 (9th Cir. 2006) ("[T]he ALJ properly discounted [an] opinion . . . because Dr. Brown's opinion regarding [the claimant's] physical limitations was beyond her professional expertise as a Ph. D. psychologist."); *Castillo v. Colvin*, No. CV 15-07061-DFM, 2016 WL 5019090, at *8 (C.D. Cal. Sept. 19, 2016), *judgment entered*, No. CV 15-07061-DFM, 2016 WL 5110523 (C.D. Cal. Sept. 19, 2016) (noting that the ALJ properly ignored the portions of a psychologist's opinion where "Dr. Wendel went beyond merely assessing the impact of [the claimant's] physical symptoms on her mental condition to opining on her physical symptoms themselves.").

Dr. Pugach, a neurology specialist, noted in his review of systems on January 12, 2015, September 15, 2015, May 17, 2017, November 15, 2017, May 9, 2018, that Plaintiff was positive for IBS. Tr. 337, 343, 380, 383, 386. Yet there is no evidence, nor does Plaintiff argue, that these annotations in Dr. Pugach's review of systems were the result of medically acceptable clinical and laboratory diagnostic techniques. *Cf.* 20 C.F.R. §§ 404.1521. Plaintiff also does not argue, nor does the undersigned find, that these passing references during a neurology consultation represent objective medical evidence in support of IBS. The fact that Plaintiff was allegedly referred to a gastroenterologist for a colonoscopy, which Plaintiff declined due to anxiety (*cf.* Tr. 459-60), also falls short of objective medical evidence demonstrating this condition. Accordingly, the undersigned does not find that the ALJ erred by failing to find IBS to be a medically determinable impairment or by failing to include any limitations associated with this alleged condition. Except as otherwise noted, the undersigned will therefore not discuss Plaintiff's arguments related to IBS in the analysis below.

With respect to PTSD, ADHD, social anxiety, generalized anxiety disorder, depression, avoidant personality disorder, and paranoid schizophrenia, the ALJ references each of these

conditions as non-severe medically determinable impairments. Tr. 429. The ALJ notes that in assessing the RFC she "must consider all of [Plaintiff's] impairments, including impairments that are not severe." Tr. 428. Accordingly, the court need not resolve whether the ALJ erred in determining that these medically determinable impairments were non-severe, rather than severe because any error in this regard is harmless provided the ALJ appropriately considers the limitations represented by all medically determinable impairments when developing the RFC. *Hoyle v. Comm'r of Soc. Sec.*, No. 1:20-cv-00273-RJC, 2022 U.S. Dist. LEXIS 40018, at *8 (W.D.N.C. Mar. 7, 2022) ("[C]ourts have held that errors when determining a medically determinable impairment is not severe is harmless if the ALJ considers the not severe impairments in the ALJ's RFC assessment."); *Ferrebee v. Saul*, No. 1:19CV1139, 2021 U.S. Dist. LEXIS 22142, at *14 (M.D.N.C. Feb. 5, 2021) ("Where an ALJ finds at least one severe impairment, any failure to identify more generally cannot constitute reversible error, because, 'upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining steps in his disability evaluation.'") (quoting *Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). The undersigned will separately consider whether the ALJ's RFC is supported by substantial evidence below.

**B.      ALJ's assessment of medical opinions**

Plaintiff contends that the ALJ erred when she failed to accord greater weight to the medical opinions of Dr. Pugach, Dr. Bowens, Dr. Gualtieri, and Dr. Liebowitz. Pl.'s Brief [DE-13] at 14. The Commissioner argues that "[t]he ALJ's opinion analysis comports with the applicable regulatory framework and is supported by substantial evidence." Def.'s Brief [DE-17] at 14.

For claims filed before March 27, 2017,[3] the evaluation of opinion evidence is governed by 20 C.F.R. § 404.1527. Because Plaintiff filed his claim on February 11, 2016 (Tr. 72, 169-75), this is the applicable regulation regarding the evaluation of medical source opinions. Under this regulation, the ALJ should assign more weight to the medical opinion of a source who has examined the claimant than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to the opinion of a treating source,[4] rather than non-treating sources, such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2); *see also Warren v. Berryhill*, No. 4:16-CV-77-FL, 2017 WL 3326978, at *3 (E.D.N.C. July 10, 2017); *Moore v. Colvin*, No. 4:12-CV-189-FL, 2013 WL 5434052, at *4 (E.D.N.C. Sept. 27, 2013). Controlling weight will be given "to a treating physician's opinion on the nature and severity of [a] claimant's impairment if that opinion is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with the other substantial evidence' in the record." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 106 (4th Cir. 2020) (quoting 20 C.F.R. § 404.1527(c)(2)). Under the treating physician rule, "the opinion of a claimant's treating physician [must] be given great weight and may be disregarded only if there is persuasive contradictory evidence." *Arakas*, 983 F.3d 83, 107 (quoting *Coffman v.*

---

[3] The applicable regulation regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017, is 20 C.F.R. § 404.1520c, entitled "*How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017.*"

[4] "Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such case, we will consider the acceptable medical source to be a nontreating source." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

*Bowen,* 829 F.2d 514, 417 (4th Cir.1987)).

"If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, (5) whether the physician is a specialist, and (6) any other relevant factors." *McCormick v. Colvin*, No. 7:13-CV-00234-RJ, 2015 WL 1471269, at *7 (E.D.N.C. Mar. 31, 2015) (citing *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citation omitted); *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)). The ALJ is not required, however, to discuss all of these factors. *McCormick*, 2015 WL 1471269, at *7 (citing *Ware*, 2012 WL 6645000, at *2 (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Munson v. Astrue*, No. 5:08-CV-l10-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008) (unpublished)).

Yet, an ALJ "must give 'good reasons' for the weight assigned to a treating physician's opinion." *White v. Colvin*, No. 5:13-CV-853-FL, 2015 WL 545447, at *7 (E.D.N.C. Feb. 10, 2015) (quoting *Ware*, 2012 WL 6645000, at *3). And, while an ALJ is not obligated to accept any medical opinion, the ALJ is required to explain the weight given to each opinion. *McCormick*, 2015 WL 1471269, at *7 (citing *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished)); *see also Lamb v. Berryhill*, No. 7:16-CV-397-BO, 2017 WL 5509998, at *3 (E.D.N.C. Nov. 17, 2017) (citing *Mastro*, 270 F.3d at 178). "Without . . . specific explanation of the ALJ's reasons for the differing weights he assigned various medical opinions, neither [the court of appeals] nor the district court can undertake meaningful substantial-evidence

11

review." *David v. Berryhill*, No. 7:17-CV-157-FL, 2018 WL 4664129, at *3 (E.D.N.C. Sept. 28, 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016)) (alterations in original).

Finally, although a medical source who is not an acceptable medical source cannot provide a "medical opinion" (*Johnson v. Colvin*, No. 4:15-CV-147-F, 2016 WL 11430306, at *8 (E.D.N.C. Aug. 25, 2016) (citing S.S.R. 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006)), the ALJ must still consider these sources' opinions using the same six factors set forth above. 20 C.F.R. § 404.1527(f)(1). However, "not every factor . . . will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1). An ALJ "generally should explain the weight given to opinions from [not acceptable medical] sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* § 404.1527(f)(2). And while the opinion of a not acceptable medical source is typically entitled to "significantly less weight" than a medical opinion (*Johnson*, 2016 WL 11430306, at *8 (citing *Craig*, 76 F.3d at 586; 20 C.F.R. §§ 404.1513, 416.913)), in some cases it may be appropriate to give the opinion of a not acceptable medical source more weight than a medical opinion (20 C.F.R. § 404.1527(f)(1)). "For example, . . . if [the source] has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." 20 C.F.R. § 404.1527(f)(1). Yet, an opinion from a source that is not an acceptable source cannot be afforded controlling weight. *McCormick*, 2015 WL 1471269, at *7 (citing S.S.R. 06-03p, 2006 WL 2329939, at *2).

12

### 1. Medical Opinions

#### a. Dr. Pugach

In her written decision, the ALJ provides that treating neurologist, Dr. Pugach, reported, *inter alia*, Plaintiff's "[a]ttention and concentration were intact," that Plaintiff "had no recent or remote memory impairment [and] . . . was in no acute distress." Tr. 432. Dr. Pugach's "[d]iagnoses included status-post closed head injury with concussion, chronic post-traumatic (migrainosus) headaches completely controlled by Amitriptyline with adverse effect of sedation." Tr. 433. The ALJ notes Dr. Pugach's findings from January 21, 2014, that "as long as [Plaintiff] took his medications at the current doses, he had no headaches at all" (Tr. 433) and May 9, 2018, that "[Plaintiff] has done well with these medicines completely preventing his headaches from occurring." Tr. 433.

The ALJ explains that she "gives no weight to Dr. Pugach's opinion . . . that the side effect of erectile dysfunction from the medication which effectively treat his posttraumatic stress headaches 'is indirectly a result of his [September 23, 2010] injury.'" Tr. 437. Under the treating physician rule, because the ALJ determined that Dr. Pugach's opinion was not entitled to "controlling weight," the ALJ was required to analyze and weigh the opinions using the six factors above. *See McCormick*, 2015 WL 1471269, at *7 (citing *Johnson*, 434 F.3d at 654). Additionally, the ALJ was required to give "good reasons" for the weight assigned (*White*, 2015 WL 545447, at *7), and provide "specific explanations" for each reason (*David*, 2018 WL 4664129, at *3). Here, in justifying her decision to assign Dr. Pugach's opinion less than controlling weight, the ALJ simply contends that "does not allege and nothing in the clinical record or statements from the vocational experts at either the prior hearing or the current hearing suggest that erectile dysfunction has any effect on [Plaintiff's] physical and/or mental functional capacity to stain [(*sic.*)] work

13

activity." Tr. 437. While the cursory explanation provided by the ALJ may not satisfy the requirements of the treating physician rule, Plaintiff is not prejudiced by this finding as Plaintiff does not allege any functional limitations associated with side effects of erectile dysfunction from the medication.

Yet Plaintiff also highlights that "Dr. Pugach noted fatigue. . .and memory loss." Pl.'s Brief [DE-14] at 7 (citing Tr. 337, 343, 380, 383, 386). In his review of systems, Dr. Pugach notes Plaintiff's reports of fatigue on May 9, 2018, (Tr. 380) and memory loss on May 17, 2017, and May 9, 2018 (Tr. 380, 386). *See generally* Pl.'s Brief [DE-14]. The ALJ's failure to explain why she discounted these findings violates the treating physician rule. "Without any specific citations to inconsistencies in the physicians' notes or medical evidence, the court cannot conclude that the ALJ's decision to accord the opinions of [P]laintiff's treating physician[] less than controlling weight is supported by substantial evidence." *Spence v. Astrue*, No. BPG-08-0851, 2009 WL 3162060, at *6 (D. Md. Sept. 30, 2009). Even reading the ALJ's written decision as a whole, it is unclear exactly which portions of Dr. Pugach's opinion the ALJ finds inconsistent, and unclear which evidence the ALJ relies upon in finding the opinions inconsistent. Because the ALJ's analysis here is flawed, undersigned finds that this proffered reason by the ALJ is not a "good reason" to discredit Dr. Pugach's opinion, and remand is recommended on this issue. *See White*, 2015 WL 545447, at *7 (stating that the ALJ "must give 'good reasons' for the weight assigned to a treating physician's opinion").

### b. Dr. Bowens

The ALJ considered the treatment notes of Dr. Bowens from December 4, 2014, through July 17, 2018. Tr. 434. Several of the treatment notes reported unremarkable mental status exams with no acute problems. Tr. 434. The ALJ notes that while Dr. Bowens reported Plaintiff's

14

complaints "of poor concentration . . . limiting his ability to take courses in college," Plaintiff testified at the administrative hearing "that they did not offer more computer technology courses." *Id.* The ALJ also highlights Plaintiff's reports to Dr. Bowens in February 2017 that he was "in a quandary over completing academics vs. settling his case with Workers' Compensation." *Id.* In the previous order on this matter, Judge Boyle found that "the ALJ omitted any discussion regarding the weight assigned to Dr. Bowen[s'] opinions." *Hudson v. Saul*, No. 2:20-CV-9-BO, 2021 WL 2816419, at *2. In the instant decision, the ALJ contends that Dr. Bowens' "statements, in fact, do not meet the criteria of medical opinions[, because] the reports offer nothing more than a recitation of [Plaintiff's] subjective complaints and alleged symptoms and limitations rather than offering medical opinions." Tr. 436. The ALJ then provides that "[t]o the extent that they might possibly be considered medical opinions, they are assigned no weight because they are inconsistent with Dr. Bowens['] own objective findings of unremarkable mental status at every office [visit]." *Id.*

For claims filed before March 27, 2017, medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their] physical or mental restrictions." *Id.* §§ 404.1527(a)(1), 416.927(a)(1). An "'[a]cceptable medical source' is defined by regulation and includes only licensed physicians, licensed or certified psychologists for purposes of establishing intellectual disability and intellectual functioning levels, licensed optometrists for purposes of establishing visual disorders, licensed podiatrists, and qualified speech-language pathologists." *Braswell v. Saul*, No. 5:19-CV-336-KS, 2020 WL 4937509, at *3 (E.D.N.C. Aug. 24, 2020) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a) (effective until Mar. 27, 2017)). In evaluating medical opinions, the

15

ALJ must "always consider the medical opinions in [a] case record together with the rest of the relevant evidence [it] receive[s]." *Id.* §§ 404.1527(b), 416.927(b) (citing 20 C.F.R. § 404.1520b).

While many of Dr. Bowens' notes simply summarize Plaintiff's relevant medical history and discussions with Plaintiff regarding Plaintiff's stressors, coping and progress (*see* Tr. 321-30, 361, 363-70, 395-96, 398-401, 403-05, 408, 410-14), there are numerous records from Dr. Bowens that provide assessments about Plaintiff's mental condition, abilities, and limitations. For example, on August 10, 2016, Dr. Bowens assessed Plaintiff to be "preoccupied [with] details of fixing automobile at obsessive level." Tr. 362. On June 15, 2017, Dr. Bowens found that Plaintiff exhibited "heightened arousal on every session since first encounter and persistent" and that Plaintiff's "ADHD [was] caused or aggravated by TBI sustained at employment." Tr. 407. On July 7, 2017, Dr. Bowens opined that Plaintiff's TBI "should be listed as comorbidity." Tr. 406. On November 29, 2017, Dr. Bowens assessed Plaintiff to be "guarded [and to have] intense physiological responses, [including cold and clammy hands]." Tr. 402. On April 11, 2018, Dr. Bowens noted that Plaintiff "repeated open ended responses or statements, incoherent train of thought." Tr. 397.

In light of such findings by Dr. Bowens, the ALJ's assessment of Dr. Bowen's treatment records is problematic on several counts. First, contrary to the ALJ's position, while many of Dr. Bowen's treatment notes do not document remarkable findings, there are many that do, as discussed above. Second, Dr. Bowens noted various physical and psychological observations in his treatment notes. *See, e.g.*, Tr. 402 (noting "intense physiological responses, [including cold and clammy hands]"); Tr. 397 (noting that Plaintiff "repeated open ended responses or statements, incoherent train of thought."). Third, even if Dr. Bowen's findings were primarily based on Plaintiff's subjective reports, this is an inherent aspect of many mental health conditions. The

16

Fourth Circuit has recently noted that in cases where "[n]o laboratory test has yielded results of sufficient sensitivity and specificity to be used as a diagnostic tool[, such as depression,] . . . a physician's use of subjective complaints 'hardly undermines his opinion as to [the patient's] functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool.'" *Miller v. Bisignano*,[5] No. 24-1014, 2025 LX 98702, at *6 (4th Cir. May 15, 2025) (last alteration in original) (quoting *Easterbrook v. Kijakazi*, 88 F.4th 502, 514 (4th Cir. 2023)).

Dr. Bowens diagnosed Plaintiff with PTSD and ADHD. *See* Tr. 321. Various courts have noted that laboratory tests are generally not used to diagnose mental health conditions. *See Overton v. Sec'y of HHS*, 904 F.2d 36 (6th Cir. 1990) ("In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain clinical manifestations of medical illness.") (alterations in original) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989); *Poulin v. Bowen*, 260 U.S. App. D.C. 142, 817 F.2d 865, 873 (1987) ("[A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment.") (alteration in original).

Accordingly, the deficiencies in the ALJ's assessment of Dr. Bowens' medical opinion preclude the undersigned from finding that such assessment is supported by substantial evidence, and remand is recommended on this issue.

### c. Dr. Gualtieri

Dr. Gualtieri conducted an independent medical exam with Plaintiff on April 26, 2018. Tr. 371-78. Dr. Gualtieri's concludes his opinion with a finding that Plaintiff "is gravely disabled, not

---

[5] It is important to note that the ALJ issued his decision on June 12, 2023, prior to the Fourth Circuit's decision in *Miller*, 2025 LX 98702, on May 15, 2025. Accordingly, the ALJ could not have applied the findings in *Miller* when deciding this case in the first instance.

by [PTSD], but rather by social anxiety, and avoidant personality and paranoid tendencies[ and that f]or those problems, he is willfully undertreated." Tr. 378.

The ALJ notes Dr. Gualtieri's exam findings that Plaintiff was "not anxious, depressed, agitated, disorganized, or paranoid" and that "his mental state is clear and his neurological exam is non-focal." Tr. 434. The ALJ highlights Dr. Gualtieri's observations of indications that Plaintiff "may have been less than forthcoming in his responses" and "attempted to portray himself in a negative manner, and that the clinical picture, if it were based entirely on [Plaintiff's] representations, might be distorted." *Id.* The ALJ also cites Dr. Gualtieri's opinion "that one could not attribute [Plaintiff's] ongoing problems to the events in September 2010." *Id.* The ALJ also reports Dr. Gualtieri's "diagnoses of social anxiety, avoidant personality, and paranoid ideation." Tr. 435.

The ALJ later provides that "[n]o weight is given to Dr. Gualtieri's April 26, 2018 opinion based on a snapshot neuropsychiatric examination." Tr. 437. The ALJ assesses Dr. Gualtieri's opinion to be "inconsistent with the substantial evidence of record, most significantly the routinely normal mental status evaluations at numerous office visits with the treating neurologist and the likewise unremarkable observations from the consultative psychologist." Tr. 437. The ALJ also critiques Dr. Gualtieri's opinions for being "internally inconsistent with his own objective observations" on examination, including that Plaintiff's "'mental state is clear, his neurological exam is nonfocal' and 'he is not anxious, depressed, agitated, disorganized or paranoid.'" *Id.* The ALJ highlights that the "Personality Assessment Inventory indicative of significant impairment was questionable noting that 'some of the validity indicators fell outside the normal range, suggesting that [Plaintiff] may not have answered in a completely forthright manner.'" *Id.* The ALJ also explains that she gives "no weight . . . to the conclusory opinions that [Plaintiff] is

18

'disabled' or that his conditions are 'disabling,' because "[s]uch statements on the ultimate question of disability are reserved to the Commissioner." *Id.*

The ALJ was correct to disregard Dr. Gualtieri's findings on Plaintiff's disability, as this question is reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3)(i). The ALJ was also entitled to discount Plaintiff's subjective statements to Dr. Gualtieri based on evidence that Plaintiff was not being fully candid during the examination. *See Pendley v. Astrue*, No. 1:11cv309, 2013 U.S. Dist. LEXIS 30274, at *11-12 (W.D.N.C. Mar. 5, 2013) ("[A]n ALJ may discount a claimant's allegations if there is evidence that a claimant was a malingerer or was exaggerating symptoms for financial gain.") (alteration in original) (quoting *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)). Yet the ALJ also appears to contend that the absence of clinical observations of anxiety during appointments with mental health professionals, discounts any findings of social anxiety or limitations in interacting with the public. Many courts have found this type of reasoning to be problematic. The Fourth Circuit has noted that "people with chronic diseases can experience good and bad days" *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 357 (4th Cir. 2023) (quoting *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267 (11th Cir. 2019)). Furthermore, "when evaluating a claimant's medical records, an ALJ must take into account the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace." *Simon v. Comm'r, SSA*, 7 F.4th 1094, 1107 (11th Cir. 2021); *see also Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000) ("For a person . . .who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic."); *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[O]bservations of cognitive functioning during therapy sessions do not contradict Ghanim's reported symptoms of depression and social anxiety."); *Janet M. v. Comm'r SSA*, No. 6:21-cv-

00725-AR, 2022 U.S. Dist. LEXIS 230400, at *11 (D. Or. Dec. 22, 2022) (finding that mental status evaluations that Plaintiff "'was pleasant and cooperative during medical appointments,' well-groomed, and 'engaged and active in the conversation'" did not contradict subjective limitations associated with Plaintiff's PTSD, generalized anxiety disorder, major depressive disorder, and panic disorder.); *cf. also Testamark v. Berryhill*, 736 F. App'x 395, 399 (4th Cir. 2018) ("By relying on these limited observations to discredit the treating source opinions, the ALJ's opinion seizes on insignificant inconsistencies in the treatment record while overlooking the record's broader import.").

Accordingly, because the ALJ appears to have employed factors to discount Plaintiff's social anxiety and limitations in interacting with the public that contravene relevant case law, the undersigned finds that the ALJ's findings in this regard are unsupported by substantial evidence, and recommends remand on this issue.

### d. Dr. Liebowitz

On September 4, 2022, Dr. Liebowitz, Plaintiff's treating psychologist at that time, completed a medical opinion on Plaintiff's history and condition. Tr. 666-67. The ALJ found that Dr. Liebowitz's opinion "offers nothing more than a reiteration [of Plaintiff's] history, a statement that [Plaintiff's] subjective depression and anxiety screenings indicates severe levels of both depression and anxiety, and a comment that [Plaintiff's] assertions of having a home security system and monitoring it extensively is clearly evidence of hypervigilance." Tr. 435. The ALJ also notes that Dr. Liebowitz "offers a guarded prognosis and a belief that psychotherapy is necessary for maximum therapeutic benefit." *Id.*

The ALJ gave "no weight" to Dr. Liebowitz's opinion as it was "based on an interview with [Plaintiff] that took place years after the expiration of [Plaintiff's] disability insured status and

20

provides no meaningful insight into [Plaintiff's] status as of that date." Tr. 437. The ALJ notes that Dr. Liebowitz "did not begin providing psychotherapy to the claimant until after this letter was written." *Id.*

Evidence after the date last insured can be relevant to proving disability before the date last insured. *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012) ("Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI."), *abrogated on other grounds*); *see also Green v. Colvin*, 61 F. Supp. 3d 562, 567 (W.D. Va. 2014) ("It is well settled that evidence developed after termination of insured status may be relevant to prove disability arising before the date last insured.").

In light of the above recommendation that this case be remanded to the Commissioner, and as the findings on remand may be substantially different, the undersigned does not make a recommendation regarding Plaintiff's contentions about the sufficiency of the ALJ's evaluation of Dr. Liebowitz's medical opinion. On remand, however, the ALJ should consider Plaintiff's argument here. The ALJ should also consider whether additional explanation is necessary regarding the findings as to the weight afforded to Dr. Liebowitz's medical opinion. Without an adequate explanation of the ALJ's findings, the court is left to guess about how the ALJ arrived at his conclusions, and meaningful review is frustrated. *Mascio*, 780 F.3d at 637.

### 2. Conclusion regarding medical opinions

While the ALJ did not err in her consideration of all of the medical opinions, the deficiencies identified above with respect to certain medical opinions warrant remand. Accordingly, the undersigned RECOMMENDS this case be REMANDED to the Commissioner for further proceedings. On remand, the Commissioner should make findings that sufficiently

21

explain the weight given to the medical opinions, and that would permit meaningful judicial review, if necessary. It is, of course, up to the Commissioner to determine what weight to give all evidence, including the opinion evidence.

## C. Nonexertional limitations and assessment of subjective limitations

Plaintiff contends that the ALJ erred when she failed to consider nonexertional limitations in making a determination on the RFC assessment. Pl.'s Brief [DE-14] at 13. Specifically, Plaintiff contends that "the ALJ failed to adequately account for [Plaintiff's] memory loss, inability to focus and concentrate, difficulty in completing tasks, fatigue, frequent bathroom visits and difficulty being around others." Pl.'s Brief [DE-14] at 31. The Commissioner counters that "[t]he ALJ considered the evidence relevant to Plaintiff's ability to perform work without any mental limitations" and that "[t]he assessed [RFC] finding is supported by substantial evidence." Def.'s Brief [DE-17] at 12, 14.

The undersigned finds that this issue substantially overlaps with Plaintiff's following argument, that the ALJ erred by failing to properly assess Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms which were consistent with the medical evidence and other evidence in the record. Pl.'s Brief [DE-13] at 14. In response to this latter argument, the Commissioner asserts that "the ALJ as factfinder considered Plaintiff's subjective complaints, and ultimately concluded that he was not as limited as alleged" and "the ALJ provided a fulsome analysis of the available evidence, and her ultimate [RFC] finding should be upheld." Def.'s Brief [DE-17] at 18.

As Plaintiff's frequent bathroom visits are not connected to a medically determinable impairment for the reasons discussed above, the ALJ did not err in failing to discuss them. In her decision, the ALJ notes consultative examinations showing that (i) Plaintiff's "recent/remote

22

memory is intact"; (ii) "[h]is estimated intellectual level is average"; (iii) "treating practitioners do not observe that [Plaintiff] is overly distractible or slow"; and (iv) Plaintiff "has reported performing activities that require some concentration, persistence, and pace[, including taking college classes and working on his automobile]." Tr. 430.

Plaintiff argues that "the credible evidence demonstrates that he experiences memory loss, inability to focus and concentrate, difficulty in completing tasks, . . . and difficulty being around others." Pl.'s Brief [DE-14] at 32. Yet "the relevant inquiry here is not whether substantial evidence supports Plaintiff's desired findings, but instead whether substantial evidence supports the ALJ's findings." *Dexter v. Kijakazi*, No. 3:21-cv-164-MOC, 2022 U.S. Dist. LEXIS 47885, at *21-22 (W.D.N.C. Mar. 17, 2022) (citing *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].") (alteration in original) (quoting *Craig*, 76 F.3d at 589).

At the same time, for the reasons discussed above, the ALJ's reliance on the fact that Plaintiff "generally interacts normally with all treating practitioners" to discount any finding of social anxiety or greater limitations in interacting with others is problematic. Tr. 430. Similarly, when discounting Plaintiff's limitations in interacting with others, the ALJ cites Plaintiff's mother's third-party function report, dated September 4, 2016, in support of an observation that Plaintiff "goes out in public to shop for groceries for his son when he visits on the weekend." Tr. 236. The ALJ's decision, however, does not mention that the same function report provides that the shopping occurs "once a week [for] not long, [because] he doesn't like to be around other people." Tr. 236. Similarly, while Plaintiff reports in his own function report, dated April 25, 2026, that he shops for his son once a week (Tr. 217), he also reports that he "really [does not] like

23

going out in public" and that he has "to sit in [his] car thirty minutes or more and work up the nerve to into Walmart when [he goes] shopping" (Tr. 219). Similarly, Plaintiff testified at the administrative hearing before the ALJ that "[w]henever [Plaintiff is] in a crowd or at a store or something, [he] feel[s] like, like [he] did back when I was working at the prison, after the assault" and that he "can feel a panic attack coming on." Tr. 42.

The ALJ's statements regarding Plaintiff's shopping are incomplete without this necessary context. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Such omissions frustrate meaningful judicial review. *DeLoatche*, 715 F.2d at 150 ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator.").

The undersigned, therefore, RECOMMENDS that the court remand this matter due to the lack of clarity on whether the ALJ considered all relevant evidence in assessing Plaintiff's limitations in interacting with the public and the ALJ's failure to provide sufficient explanation to allow the court to determine whether her decision is supported by substantial evidence. While it is ultimately up to the ALJ to weigh the evidence of record, the ALJ must properly consider all pertinent evidence before her.

**D. Consideration of VE testimony**

Plaintiff contends that the ALJ erred when she failed to consider all of the testimony of the VE. Pl.'s Brief [DE-13] at 14. Specifically, Plaintiff notes the VE's testimony at the second administrative hearing,

> that there would be no competitive employment if the employee was (1) off task more than 10% of the workday, even if that occurred once per week consistently; (2) unable to focus and concentrate for up to two hour intervals; (3) unable to work around members of the

24

public; (4) unable to perform simple, routine repetitive tasks during the eight hour work day; (5) required to take frequent bathroom breaks for 30 minutes at a time.

Pl.'s Brief [DE-14] at 36 (citing Tr. 469-471).

The Commissioner counters that "[t]he ALJ was not obligated to consider hypothetical vocational expert testimony when assessing Plaintiff's limitations." Def.'s Brief [DE-17] at 22. Specifically, the Commissioner argues that "[w]ithin this context of information-gathering, it is clear that the mere asking of a hypothetical question does not indicate its proposed limitations are supported by the record or will be included in the ultimate residual functional capacity finding." *Id.* at 23.

Plaintiff's argument is misplaced. A VE's testimony informs whether substantial gainful employment is available to an individual with Plaintiff's RFC and other relevant characteristics. A VE does not, however, provide any evidence about what limitations a claimant does or does not have. Plaintiff's argument here relates to Plaintiff's RFC, which has already been discussed above. Accordingly, Plaintiff's final argument is meritless.

**E.      Request for reversal without remand**

Plaintiff expressly "requests that the District Court grant the Plaintiff's motion for Judgment on the Pleadings, reversing the decision of the ALJ *without remand* and direct a finding that [Plaintiff] is disabled under the Social Security Act and regulations." Pl.'s Brief [DE-14] at 39. "The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one that 'lies within the sound discretion of the district court.'" *Perry v. Colvin*, No. 5:13-CV-87-BO, 2014 WL 1056736, at *3 (E.D.N.C. Mar. 18, 2014) (quoting *Edwards v. Bowen*, 672 F.Supp. 230, 237 (E.D.N.C.1987)). Reversal for award of benefits rather than remand is appropriate when "[o]n the state of the record, [Plaintiff's] entitlement to benefits is wholly

established." *Crider v. Harris*, 624 F.2d 15, 17 (4th Cir. 1980). A court may "reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir.1974). Conversely, [r]emand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from 'meaningful review.'" *Perry v. Colvin*, No. 5:13-CV-87-BO, 2014 WL 1056736, at *3 (E.D.N.C. Mar. 18, 2014) (quoting *Radford v. Colvin*, 734 F.3d 288, 296.

The undersigned does not find that Plaintiff has demonstrated the high bar necessary to warrant reversal. While the ALJ's decision suffers from deficiencies for the reasons provided above, the record is not so one-sided so as to wholly established Plaintiff's entitlement to benefits. Accordingly, the undersigned RECOMMENDS that Plaintiff's request for reversal *without remand* be DENIED, and that this case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## VII. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's motion [DE-13] and brief [DE-14] be ALLOWED IN PART, Defendant's brief [DE-17] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 9, 2026**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier of 14 days from the filing of the objections or March 17, 2026**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** ***See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 27th day of February, 2026.

Brian S. Meyers
United States Magistrate Judge

27